IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **ANTHONY WRIGHT,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| v. | : | |
| | : | No. 16-5020 |
| **CITY OF PHILADELPHIA et al.,** | : | |
| *Defendants*. | : | |

PRATTER, J.                                                                                         AUGUST 21, 2017

**MEMORANDUM**

**I.    INTRODUCTION**

Mr. Wright sued the City of Philadelphia and a number of its former police department employees for constitutional violations arising out of his 1991 arrest, 1993 prosecution, and 25-year imprisonment for a rape and murder he did not commit. In 2016 a jury acquitted Mr. Wright of the rape and murder after a retrial that included DNA evidence not available at his initial trial.[1] The dispute currently before the Court centers on whether Mr. Wright and his attorneys have complied with their obligations under this case's governing Confidentiality Agreement to use reasonable efforts to retrieve documents Defendants designated as confidential three months after the documents were produced to Mr. Wright. For the reasons that follow, the Court will deny the Philadelphia District Attorney's Office's Motion to Enforce.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

Mr. Wright initiated this lawsuit on September 20, 2016 by filing a complaint asserting, among other claims, a claim for municipal liability pursuant to *Monell v. City of New York Dep't*

---

[1] Because the Court writes primarily for the parties, a full recitation of the allegations contained in Mr. Wright's complaint is not provided here. A more thorough recounting of Mr. Wright's allegations is contained in the Court's opinion denying the Defendants' partial Motion to Dismiss. *See Wright v. City of Phila.*, 229 F. Supp. 3d 322 (E.D. Pa. 2017).

1

*of Social Servs.*, 436 U.S. 658 (1978).  In March 2017, the Court entered a Confidentiality Agreement to which Mr. Wright, Defendants, and nonparty the Philadelphia District Attorney's Office ("DAO") were signatories.  The Confidentiality Agreement covered topics including (i) the procedures for designating information as confidential, (ii) who the parties could disclose confidential information to and under what circumstances, and (iii) the procedures for designating information as confidential after a party inadvertently produced or disclosed confidential information.  The Confidentiality Agreement applied retroactively to all documents produced on or after February 3, 2017.

Mr. Wright served a set of discovery requests on Defendants in December 2016, which included a request for the production of Homicide Unit and Internal Affairs Division files (the "Homicide Files") covering eight homicide investigations.  While the Homicide Files do not relate to the investigation into Mr. Wright, they do cover investigations in which named defendants in this case participated.  Defendants, in consultation with the DAO, produced six of the requested files in March 2017.  Defendants did not mark the produced Homicide Files confidential.

After receiving the Homicide Files, Mr. Wright's counsel shared a subset of the Homicide Files with counsel for the Pennsylvania Innocence Project.  The Innocence Project represents certain of the criminal defendants—who are the subjects of the Homicide Files—in connection with those criminal defendants' pending or prospective post-conviction proceedings in Pennsylvania state court.  Mr. Wright's counsel shared the Homicide Files with the Innocence Project, who had a more complete understanding of its clients' cases, to assess the relevance of the Homicide Files to Mr. Wright's *Monell* claim.

After reviewing the Homicide Files, the Innocence Project made a determination that the files contain exculpatory evidence that had not previously been disclosed to its clients. The Innocence Project then informed the DAO in June 2017 that it was in possession of exculpatory evidence that had not previously been disclosed to its clients and requested that the DAO's Conviction Review Unit open an investigation into their clients' cases. Two days later, defense counsel in this litigation contacted Mr. Wright's counsel and (i) designated the Homicide Files as confidential pursuant to Paragraph 8 of the Confidentiality Agreement, which deals with inadvertent disclosures, and (ii) requested that Mr. Wright's counsel retrieve the Homicide Files from any third parties to whom the files were disclosed.

Mr. Wright, Defendants, the DAO, and the Innocence Project met and conferred in good faith to resolve the dispute over Defendants' confidentiality designation and request that Mr. Wright's counsel retrieve all copies of the Homicide Files that had been disseminated. Unable to resolve their dispute, Mr. Wright filed a Motion to Strike Defendants' confidentiality designation. The Court subsequently granted the Innocence Project's Motion to Intervene for the limited purpose of being heard on Plaintiff's Motion to Strike and the DAO's Motion to Intervene for the limited purposes of (i) presenting argument concerning enforcement of the Confidentiality Agreement, and (ii) being heard on Plaintiff's Motion to Strike. The Innocence Project then filed its own Motion to Strike Defendants' confidentiality designation and the DAO filed a Motion to Enforce the Confidentiality Agreement.[2]

## III. DISCUSSION

The DAO ultimately seeks to prevent what has already been done. Criminal defendants represented by the Innocence Project obtained discovery concerning their respective criminal

---

[2] Oral argument on Mr. Wright's and the Innocence Project's Motions to Strike is set for October 2, 2017. The present opinion focuses solely on the DAO's Motion to Enforce and does not speak to the propriety of the Defendants' confidentiality designation.

cases through the civil discovery process in this § 1983 action. The Innocence Project has since used that discovery to file or amend Pennsylvania Post-Conviction Relief Act ("PCRA") petitions on behalf of its clients. The DAO decries how this alleged end run around the more restrictive discovery rules governing PCRA petitions threatens to disrupt traditional notions of federal-state comity and Congress's intent that state court post-conviction petitioners exhaust state remedies before resorting to federal court. Yet, the DAO does not—and cannot—deny crucial facts underpinning the current dispute: (i) the Homicide Files were not designated as confidential when produced by Defendants or shared with the Innocence project, and (ii) no law, Court order, or statutory provision restricted Mr. Wright's ability to share non-confidential discovery with recipients of his choice and for his chosen reason. *Accord Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."). Accordingly, the present dispute does not implicate notions of federal-state comity,[3] but is rather focused on one simple question. Have Mr. Wright and his counsel fulfilled their obligations under the Confidentiality Agreement?

> Paragraph 8 of the Confidentiality Agreement states, in relevant part:
>
> If a party or the DAO inadvertently produces or discloses confidential information, including deposition testimony, without marking it "Confidential" or "Confidential – Attorney Only," the producing party or the DAO may subsequently designate the document or information as "Confidential" or "Confidential – Attorney Only." However, until such time that a designation is made, the document or information shall not be covered by this "Confidentiality Agreement." Thereafter, such information shall be treated as designated by the producing party or the DAO. **When undesignated documents are produced, and are later designated as "Confidential" or "Confidential – Attorney Only," and the party or parties to whom such undesignated documents were produced shall use reasonable efforts to retrieve said documents from any and all individuals to whom it has disclosed and/or produced them.**

---

[3] This opinion neither addresses nor opines on the discoverability and/or admissibility of the Homicide Files pursuant to state law and state rules of procedure.

Confidentiality Agreement ¶ 8, Doc. No. 44 (emphasis added). By the plain language of the Confidentiality Agreement, once Defendants designated the Homicide Files as confidential, Mr. Wright and his counsel were obligated to "use reasonable efforts to retrieve" the Homicide Files from the Innocence Project.[4] The DAO contends Mr. Wright and his counsel have not done so.

Mr. Wright's counsel submitted a declaration to this Court under penalty of perjury stating that, after Defendants' retroactively designated the Homicide Files confidential, they (i) contacted the Innocence Project to inform them of the asserted confidentiality and the DAO's request that the Homicide File be returned to Mr. Wright, and (ii) disabled the Internet link through which they initially shared the Homicide Files.

The DAO appears to advance four arguments for why the Court should find that Mr. Wright's counsel have not demonstrated that they made reasonable efforts to retrieve the Homicide Files from the Innocence Project: (i) Mr. Wright's initial disclosure was unreasonable because he handed over "sensitive files" to the Innocence Project knowing that they had no control over what the Innocence Project might do with the files; (ii) Mr. Wright's counsel did not *themselves* ask the Innocence Project to return the Homicide Files, but rather passed along the DAO's request that the files be returned; (iii) Mr. Wright's counsel did not sufficiently detail the steps they took to retrieve the files; and (iv) Mr. Wright's counsel has not offered to join a hypothetical motion by the DAO to compel the Innocence Project to return the Homicide Files. The Court addresses each argument in turn.

---

[4] Mr. Wright disputes that he and his counsel were even under this obligation because Defendants produced the Homicide Files purposefully, not inadvertently. Defendants and the DAO argue that the Confidentiality Agreement contemplates an inadvertent failure to designate documents as confidential as an event sufficient to trigger the procedures set forth in Paragraph 8. The Court is persuaded by Defendants' and the DAO's interpretation of the Confidentiality Agreement. The plain language of the Confidentiality Agreement contemplates the inadvertent failure to designate as confidential documents produced purposefully. Any other reading would render Paragraph 8's instructions describing how to retroactively designate documents as confidential meaningless.

First, it is of no relevance to this motion that the DAO considers the Homicide Files "sensitive." The parties and the DAO entered into a Confidentiality Agreement to protect "sensitive files." The Homicide Files, however, were not covered by the Confidentiality Agreement until Defendants' designation *after* Mr. Wright's counsel had already disseminated the files to the Innocence Project. Mr. Wright's counsel did not breach the Confidentiality Agreement when it provided the Homicide Files to the Innocence Project and it was under no obligation at the time to give any thought as to what the recipient of non-confidential discovery might do with it. *See, e.g.*, *United States v. Dougherty*, No. 07-cr-361-1, 2014 WL 3676002, *3 (E.D. Pa. July 23, 2014) (refusing to order state court to seal a document because the order in the federal case directing the document be kept under seal said "nothing about what [the parties,] let alone anybody else, or a state court, could do with the document[]").

Second, the DAO's parsing of whether Mr. Wright's counsel asked the Innocence Project to return the files or merely passed along the DAO's own request is a distinction without a difference. Counsel for the Innocence Project made clear during Oral Argument that Mr. Wright's counsel informed them of a request to return the Homicide Files and that the Innocence Project made its own determination to deny the request. The Court is unwilling to declare a request worded "Please return the Homicide Files" a reasonable effort and a request worded "The DAO has asked that you return the Homicide Files" an unreasonable effort.

Third, the Court finds that Mr. Wright's counsel's declaration is sufficient to demonstrate reasonable efforts. Mr. Wright's counsel made clear to the Innocence Project that there was an outstanding request that the Innocence Project return the Homicide Files and deactivated the Internet link where the files were initially posted. The DAO has not provided the Court with any

evidence to suggest that Mr. Wright's counsel's declaration provided false or misleading information.

The DAO further argues that even a direct request to a nonparty to return files does not constitute "reasonable efforts" because that nonparty can always decline the request. The Court is not convinced. That a nonparty can always decline a request is, the Court presumes, one of the reasons clawback provisions such as Paragraph 8 ordinarily require only "reasonable efforts." That is to say there is virtually no amount of effort (at least within the boundaries of the law) that a party can take to force a nonparty—under no legal or ethical obligations of its own—to return documents it refuses to return.[5]

Last, the Court does not agree that reasonable efforts under the circumstances require Mr. Wright's counsel to join a motion to compel directed at the Innocence Project. The Court construes the DAO's proposition to incorporate the argument it advanced during Oral Argument that the Innocence Project is bound by the terms of the Confidentiality Agreement by virtue of this Court's Order granting the Innocence Project's Motion to Intervene. *See* Confidentiality Agreement ¶ 12(f) ("This Agreement shall be binding upon these parties and any other parties subsequently added to this litigation."). The DAO misinterprets the effect of the Court's Order. The Court "permitted [the Innocence Project] to intervene in this action for the *sole purpose* of being heard on Plaintiff's Motion to Strike." July 19, 2017 Order ¶ 1, Doc. No. 75 (emphasis added). A nonparty does not become a party to a litigation when it successfully intervenes for the limited purpose of challenging a confidentiality agreement. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) (acknowledging that "the procedural device of

---

[5] This case presents a unique situation where the recipient of the retroactively designated documents has its own interest in the documents. The more typical situation arises, for example, when a party provides an uninterested nonparty with information subsequently designated confidential. Under those situations, a request to return the documents is ordinarily sufficient because the recipient has no material interest in keeping the documents.

permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action" and explaining that such intervenors do not "becom[e] parties to the litigation" (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473-74 (9th Cir. 1992)); *see also Koprowski v. Wistar Inst. of Anatomy & Biology*, No. 92-1182, 1993 WL 332061, at *1 (E.D. Pa. Aug. 19, 1993) ("When a non-party seeks permissive intervention for [a] limited purpose, no independent jurisdictional basis is required as that party does not intend to litigate on the merits or seek to become a party to the action." (citing *Beckman*, 966 F.2d at 473)). Because the Innocence Project is not a party to this litigation, and thus not bound by the provisions of the Confidentiality Agreement, it is not clear to the Court how the DAO proposes to compel the Innocence Project to return the Homicide Files. Certainly no party has presented the Court with a credible legal theory for how a motion to compel could succeed. Accordingly, Mr. Wright's counsel's alleged failure to volunteer to join such a motion does not factor into the Court's decision.

Based on the parties' and nonparties' submissions to the Court, and the representations made during Oral Argument, the Court is satisfied that under the circumstances of this case Mr. Wright's counsel made reasonable efforts to comply with their obligations under the Confidentiality Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Philadelphia District Attorney's Office's Motion to Enforce is denied.

\* \* \*

An appropriate Order follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE